935 So.2d 407 (2006)
Sam BOUNDS, Appellant
v.
Kathie BOUNDS, Appellee.
No. 2004-CA-02472-COA.
Court of Appeals of Mississippi.
March 21, 2006.
Rehearing Denied August 1, 2006.
*409 Robert D. Jones, attorney for appellant.
Justin M. Cobb, Leonard B. Cobb, Meridian, attorneys for appellee.
Before MYERS, P.J., CHANDLER and GRIFFIS, JJ.
CHANDLER, J., for the Court.
¶ 1. On October 27, 1993, Sam and Kathie Bounds entered into a divorce in the Chancery Court of Newton County Mississippi. On November 3, 2003, Kathie filed a motion to enforce judgment and citation for contempt against Sam. The court granted the motion and Sam appeals, raising these issues:
I. WHETHER THE COURT ERRED IN FINDING THE DEFENDANT IN CONTEMPT
II. WHETHER THE COURT ERRED IN NOT CREDITING SAM THE $1,000 WHICH WAS PAID TO KATHIE BY A THIRD PARTY CREDITOR OF SAM
III. WHETHER THE COURT ERRED IN AWARDING ATTORNEY'S FEES TO KATHIE
¶ 2. Finding no error, we affirm.

FACTS
¶ 3. Sam and Kathie entered into a divorce on the grounds of irreconcilable differences in the Chancery Court of Newton County on October 27, 1993. A property settlement was incorporated into the parties' judgment of divorce. Pursuant to the judgment of divorce, Sam agreed to convey all rights, title and interest in the marital residence to Kathie. Sam assumed the federal tax lien on the residence in the amount of approximately $30,000 and Sam was to hold Kathie harmless for any and all losses as a result of his non-payment of the lien. In 2003, Kathie entered into an agreement to sell the residence. At that time, Kathie discovered that Sam had failed to retire the federal tax lien. Because Kathie could not receive any sale proceeds or convey merchantable title without the lien being satisfied, Kathie requested *410 that Sam pay the debt. Sam refused and Kathie paid the lien in order to close on the sale of the residence.
¶ 4. Sam agrees that he did not satisfy the tax lien. However, he claims a third party creditor paid Kathie $1,000 to reduce his obligation on the lien. With regard to the remaining obligation, Sam contends he is currently unable to pay on the debt because he suffered financial loss. In 1997, Sam lost his business when it burned down in a fire. In 2000, his business was destroyed by a tornado.
¶ 5. On November 3, 2003, Kathie filed a motion to enforce judgment, citation for contempt, and related relief to seek judicial review for Sam's non-compliance. A trial was held on October 7, 2004, and a judgment for civil contempt was entered against Sam.

STANDARD OF REVIEW
¶ 6. The scope of review in domestic cases is limited. Rushing v. Rushing, 909 So.2d 155, 157(8) (Miss.Ct.App.2005). This Court will not reverse the finding of the trial court unless the chancellor abused his discretion, was manifestly wrong, clearly erroneous or applied an erroneous legal standard. Denson v. George, 642 So.2d 909, 913 (Miss.1994).

ANALYSIS

I. WHETHER THE COURT ERRED IN FINDING THE DEFENDANT IN CONTEMPT
¶ 7. Sam contends that the chancellor erred in failing to address whether his findings were related to civil or criminal contempt. At trial, Kathie was seeking both civil contempt and criminal contempt. Sam argues that the trial court erred in not making a factual adjudication on the record and clarifying the necessary burden of proof. Although the chancellor did not state the word "civil," the judge specifically stated the burden of proof for civil contempt. In the final judgment, the chancellor stated the phrase "civil contempt" several times and only discussed civil contempt standards. The judgment specifically stated that defendant is "hereby found to be in civil contempt."
¶ 8. The purpose of civil contempt is to compel parties to obey the orders of the court. Jones v. Hargrove, 516 So.2d 1354, 1357 (Miss.1987). "[C]ontempt matters are committed to the substantial discretion of the trial court which, by institutional circumstances and both temporal and visual proximity, is infinitely more competent to decide the matters than we are." Elliott v. Rogers, 775 So.2d 1285, 1291(22) (Miss.Ct.App.2000) (quoting Morreale v. Morreale, 646 So.2d 1264, 1267 (Miss.1994)).
¶ 9. In addition to his argument that the chancellor failed to identify whether the contempt was civil or criminal, Sam also contends that the judgment did not specify a monthly payment requirement; therefore, there is no evidence to show that he willfully and deliberately ignored the order of the court. A party cannot be held in contempt for failure to comply with a judgment unless the judgment is complete within itself and does not leave open any matter in which a contention may arise as to its meaning. Davis v. Davis, 829 So.2d 712, 714(9) (Miss.Ct.App. 2002).
¶ 10. In Davis, 829 So.2d at 713(2), the final judgment held that the wife would pay "all obligations owed by the parties, except three debts set forth in the opinion of the Court, i.e., the debts to the United States for goods obtained by the [wife] at the base exchange and the shipping expense overage, respectively and the deficiency to GMAC." The husband argued *411 that the judgment did not expressly order him to pay the debt; therefore, he did not willfully disobey the order and it was insufficient for the chancellor to find him in contempt. Id. at (4). The husband argued that an ordinary person reading the judgment would not know that he was required to pay. Id. at 714(9). The court did not accept the husband's argument. Id. at (10). Regardless of the fact that the judgment did not specifically state that "Davis will pay," the court held that the judgment was clear on the fact that the wife was not liable for those debts. Id.
¶ 11. In the present case, the paragraph of the property settlement incorporated into the judgment of divorce states: "There currently exists, as aforesaid, certain federal and state tax liens in the appropriate amount of Thirty Thousand Dollars and No/100 ($30,000.00) against Sam Bounds individually, and Sam Bounds does hereby assume said federal and state tax liens, as aforesaid, and he agrees to hold Kathie Bounds harmless from any and all loss(es) resultant from his non-payment of same." The mere fact that the judgment did not specifically state a monthly payment does not make the judgment ambiguous. The judgment is clear that Sam was to "assume" the debt and hold Kathie harmless of all obligations. From that perspective, Sam did not follow the judgment and he violated the order.
¶ 12. Further, Sam contends that he did not willfully violate the judgment because he cannot pay due to his financial loss. Although the chancellor has substantial discretion in a civil contempt matter, "the alleged contemnor's willful disobedience must be proven by a preponderance of the evidence." Hollaway v. Hollaway, 631 So.2d 127, 132 (Miss.1993). Both Kathie and Sam testified at trial that Sam lost his business in a fire in approximately 1997 and that he lost his business again in 2000 in a tornado. However, Sam did not offer any other evidence of his financial loss. If Sam raises his inability to pay as a defense, "the burden is on him to show this with particularity, not just in general terms." Varner v. Varner, 666 So.2d 493, 496 (Miss.1995) (citing Morreale, 646 So.2d at 1267). The trial court held that Sam "failed to meet the burden of proof of his present inability to absolve himself of contempt, or as to what the defendant's present economic ability is." The chancellor applied the correct legal standard and properly found that Sam failed to meet his burden of proof.
¶ 13. Sam's arguments relevant to this issue are without merit. "This Court will not reverse a chancellor's finding where it is supported by credible evidence." Id. (citing Shipley v. Ferguson, 638 So.2d 1295, 1297 (Miss.1994)).

II. WHETHER THE COURT ERRED IN NOT CREDITING THE DEFENDANT $1,000 PAID TO THE PLAINTIFF BY A THIRD PARTY CREDITOR
¶ 14. Sam testified that a third party creditor, Larry Mathis, owed him $1,000. Sam claims that he told Mathis to give Kathie the money and he told Kathie that Mathis was going to give her $1,000 for payment of the tax lien. Kathie testified that she did receive a $1,000 debt reduction on the purchase of the new house from Mathis. However, Kathie testified that the money was to be applied to the purchase of the house and not the lien.
¶ 15. Sam argues that the chancellor erred in not giving him credit for $1,000 that he claims was given to reimburse Kathie for her payment of the federal tax lien. Both Sam and Kathie refer to Baier v. Baier, 897 So.2d 202 (Miss.Ct.App.2005), for the proper standard of proof when considering whether credit should be applied to the lien. In Baier, a non-custodial *412 parent sought to receive child support credit for expenses paid directly to the child. Id. at 205(13). The court held that a parent is entitled to receive credit if the evidence is clear and convincing. Id.
¶ 16. In the present case, the chancellor found that Mathis' check did not denote its purpose. Additionally, the chancellor noted that Sam testified the money was for the tax lien debt and Kathie testified the money was not for the tax lien debt. We cannot say the chancellor abused his discretion in holding that there was insufficient evidence to give Sam credit for $1,000.

III. WHETHER THE COURT ERRED IN AWARDING ATTORNEY'S FEES TO THE PLAINTIFF
¶ 17. The chancellor ordered Sam to pay Kathie's attorney's fees. Sam contends that the chancellor erred in awarding attorney's fees because the chancellor failed to make the appropriate McKee analysis. McKee v. McKee, 418 So.2d 764 (Miss.1982). Determining attorney's fees is a matter within the discretion of the chancellor. Magee v. Magee, 661 So.2d 1117, 1127 (Miss.1995). This Court is reluctant to disturb a chancellor's decision to award attorney's fees and the amount awarded. Id.
¶ 18. Sam's argument fails to differentiate awarding attorney's fees in a divorce action as compared to a contempt action. In Mabus v. Mabus, 910 So.2d 486 (Miss.2005), the court addressed this issue. The trial court held a mother in contempt for failure to return the children to the father's custody. Like Sam, the mother contended that the attorney's fees the court awarded to the father for the contempt action were unreasonable because the court did not use the McKee factors. The general rule in divorce and child custody actions is that appropriate attorney's fees should be awarded in an amount to secure a competent attorney. Id. at 490(13). However, in contempt actions, attorney's fees are awarded "to make the plaintiff whole." Id. (citing Rogers v. Rogers, 662 So.2d 1111, 1116 (Miss.1995)). "When a party is held in contempt for violating a valid judgment of the court, then attorney's fees should be awarded to the party that has been forced to seek the court's enforcement of its own judgment." Elliott, 775 So.2d at 1290(25).
¶ 19. At trial, Kathie's attorney testified to Kathie's attorney's fees and an itemization of attorney's fees was introduced into evidence. Sam does not state any specific reasons why the attorney's fees were unreasonable. Sam merely contends that the chancellor erred in awarding attorney's fees because he did not consider the McKee factors. Therefore, this Court finds that the chancellor did not err in awarding attorney's fees to Kathie.
¶ 20. THE JUDGMENT OF THE CHANCERY COURT OF NEWTON COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., LEE AND MYERS, P.JJ., SOUTHWICK, IRVING, GRIFFIS, BARNES, ISHEE AND ROBERTS, JJ., CONCUR.